# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 14 C 1933 ) |
| CLACY WATSON HERRERA, | ) Judge Rebecca R. Pallmeyer ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Petitioner Clacy Watson Herrera was convicted of multiple drug offenses and sentenced to 340 months in prison. The evidence showed that during the period from 1996 to 1999, Herrera, a resident of Panama, supplied multiple kilograms of cocaine and heroin to drug dealers in the United States. The mechanism for smuggling the drugs is noteworthy: in a number of instances, the drugs were concealed in cans of baby formula that were re-sealed and then carried across the border by couriers. To defuse suspicion, the couriers traveled with babies—sometimes not their own children, but "rented" from the babies' parents. In other instances, female couriers smuggled drugs in packages inserted into their body cavities. Ultimately, the government charged 26 defendants in a 44-count indictment. Defendant Herrera, the lead Defendant, was extradited to the United States, tried before a jury, and convicted on 8 of the 14 counts against him: one count of conspiracy, and seven counts of importing or attempting to import cocaine and heroin. Herrera appealed his conviction, challenging procedural and evidentiary rulings, but the Seventh Circuit affirmed, and the Supreme Court denied Herrera's petition for certiorari. *United States v. Herrera*, 704 F.3d 480 (7th Cir.), *cert. denied*, 134 S.Ct. 175 (2013).

Herrera now seeks relief from his sentence pursuant to 28 U.S.C. § 2255, arguing that he was deprived of the effective assistance of counsel at trial and on appeal. (Pet'r's Mot. [1],

hereinafter "Pet.")  Herrera contends that in light of the evidence, his attorney should have counseled him to plead guilty.  Herrera alleges, in addition, that counsel was ineffective at sentencing and on direct appeal.  As explained here, the record defeats any suggestion that counsel failed to provide an effective representation at sentencing or on appeal, but the court will conduct a hearing on Herrera's argument that counsel should have advised him to plead guilty.

### DISCUSSION

The standards that govern petitions for relief under 28 U.S.C. § 2255 are familiar.  Such relief "is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred," resulting in "a complete miscarriage of justice."  *Blake v. United States,* 723 F.3d 870, 878-79 (7th Cir. 2013).  Generally, before a court may consider a § 2255 petition, the claims must have been raised and exhausted on direct appeal, *Massaro v. United States,* 538 U.S. 500, 504 (2003), except that a petitioner may raise an ineffective assistance of counsel claim under § 2255 regardless of whether or not petitioner could have raised the claim on direct appeal.  *Id.*  A complaint drafted by a *pro se* litigant, no matter how unartfully pleaded, is held to less stringent standards than formal pleadings drafted by counsel.  *Gutierrez v. Peters,* 111 F.3d 1364, 1369 (7th. Cir. 1997) (quoting *Hughes v. Rowe,* 449 U.S. 5, 9 (1980)).

Herrera's claim of ineffective assistance requires him to show that counsel was deficient and that this deficiency prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The deficiency prong requires that the petitioner demonstrate that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688.  The prejudice prong requires a showing that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Id.* at 694.  In assessing this claim, the court is highly deferential to counsel and observes "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland,* 466 U.S. at 689.  A failure to

establish either deficient performance or prejudice dooms the claim, *Gant v. United States*, 627 F.3d 677, 682 (7th Cir. 2010) (citing *Eddmonds v. Peters*, 93 F.3d 1307, 1313 (7th Cir. 1996)), and if the petitioner is unable to make a sufficient showing on one of the *Strickland* prongs, the court need not consider the other. *Strickland*, 466 U.S. at 697; *see Atkins v. Zenk*, 667 F.3d 939, 946 (7th Cir. 2012).

Herrera alleges he received ineffective assistance in connection with his decision to proceed to trial, at sentencing, and on direct appeal. Because the arguments concerning sentencing and appeal are straightforward, the court addresses them first.

Gabriel Fuentes, Herrera's appointed counsel, submitted a 38-page sentencing memorandum, supported by 61 pages of exhibits. The government responded to that memorandum, and counsel submitted an 18-page reply and followed that with another three-page memorandum. Mr. Fuentes's performance at the sentencing hearing was equally comprehensive; the proceeding was conducted over two days, consumed 141 pages of transcript, and reflected thoughtful preparation on a number of issues. Mr. Fuentes continued his representation of Herrera on appeal, and his submissions to the Seventh Circuit were similarly exhaustive. Herrera nevertheless argues that counsel was ineffective at sentencing and on appeal, but neither of these claims has merit.

**I.       Sentencing Issues**

**A.       Enhancement for Use of a Minor**

First, Herrera argues that counsel should have objected to the court's imposition of a two-level enhancement to Herrera's base offense level under Sentencing Guideline § 3B1.4 for "use of a minor" in connection with the offense. No objection to this guideline could have been sustained, however, and counsel was not ineffective in failing to raise it.

The relevant provision, U.S.S.G. § 3B1.4, states: "If a defendant used or attempted to use a person less than eighteen years of age to commit the offense or assist in avoiding detection of, or apprehension for, the offense, increase by 2 levels." "Use" includes "directing,

3

commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting." U.S.S.G. § 3B1.4, appl. n. 1. The Seventh Circuit defines the word "use" within the guideline as requiring a showing of some affirmative act by the defendant beyond mere knowledge of participation by the minor in the criminal activity. *United States v. Acosta,* 474 F.3d 999, 1000-01 (7th Cir. 2007).

In *Acosta,* the defendant was a member of a gang that used minors in drug distribution. In her sentencing on drug distribution charges, the district court assessed the two-level enhancement for use of a minor. *Acosta,* 474 F.3d at 1000. The appellate court vacated that enhancement, however, reasoning that though Acosta was aware of the minors' participation, there was no evidence that defendant independently directed or encouraged the minors, or that she played any role in bringing minors into the criminal enterprise. *Id.* at 1003.

In other cases, however, the Seventh Circuit has interpreted the "use of a minor" enhancement "fairly broadly," *United States v. Ramsey*, 237 F.3d 853, 859 (7th 2001), and has affirmed its application so long as the defendant took "some affirmative act to involve a minor." *United States v. Vivit*, 214 F.3d 908 (7th Cir. 2000). The evidence in this case plainly meets that test. Herrera and a co-defendant developed the plan to use infants as "cover" for drug couriers importing cocaine inside cans of baby formula. Defendant himself processed the cocaine into a liquid and returned it to the cans, soldering them shut. Herrera was involved in "counseling" and "procuring" the minors: he met personally with the couriers and the babies, arranged for lodging for them, and provided them with infant formula and other supplies. Herrera argues that there is no evidence that he personally used a minor to avoid detection, as he himself never came to the United States until his arrest and extradition, but Herrera admits that he was a "chauffeur" for his couriers and the infants during some of their trips to Panama. (Pet. 7 &10). This evidence amply satisfies the court that Herrera was involved in using a minor as defined in U.S.S.G. § 3B1.4. Counsel's objection to this enhancement would have been frivolous, and Mr. Fuentes

4

was not ineffective for declining to make such an objection. *See United States v. Cooke,* 110 F.3d 1288, 1302 (7th Cir. 1997).

### B.  The Leadership Enhancement

Herrera next claims that counsel was ineffective at sentencing for failing to challenge the application of the leadership enhancement under U.S.S.G. § 3B.1.1. (Pet. at 7.) This claim also fails—first, because counsel did in fact challenge the enhancement. Counsel argued in his sentencing memorandum that the court should find Herrera did not exercise a leadership role but was instead a middleman who had no real control over other conspirators. (Defense Position Paper in 01 CR 1098-1 [867] at 23-25.) Counsel made similar arguments orally at sentencing. (*See* Sent. Trans. in 01 CR 1098 [911] at 44.) The court overruled the objection, finding ample evidence to support the conclusion that Herrera was in fact an organizer or leader of the criminal enterprise. Absent a showing that counsel's performance was deficient in some way, the fact that the court ruled against Herrera in itself does not mean counsel was ineffective.

### C.  Sentencing Disparities

Herrera next claims that counsel was ineffective at sentencing for failing to make appropriate arguments about purported disparities between the sentence he received and the sentence imposed on other participants. Counsel had a duty to inform the court of the sentences imposed on other defendants, Herrera urges (Petitioner's Reply [11] at 5), and should have done so by preparing a chart for the court's convenience. (Pet. at 10.)

There is some irony in this argument: defense counsel's sentencing submission was lengthy, detailed, and illustrated with charts—one comparing the government's proposed drug quantities with what counsel contended the evidence showed, and a second reviewing the jury's findings on a count-by-count basis. (Sentencing Memorandum in 01 CR 1098 [867] at 6, 14.) Counsel did not create a third chart displaying the sentence imposed on co-defendants, but he did specifically address the issue of sentence disparities. Specifically, he advocated for a more lenient sentence for Herrera than what had been imposed on other conspirators, assuring the

5

court that such a sentence would be appropriate because Herrera's role was "uniquely different from that of his codefendants." (*Id.* at 31.) Thus, counsel noted, though other higher-level defendants (who pleaded guilty) received 120-month sentences, the sentence of just 77 months he proposed for defendant was justified by the fact that defendant was not as directly involved in the day-to-day operations of the criminal enterprise.

The presentence report, of course, listed each of Herrera's co-defendants and the sentence he or she received, so a chart would arguably have been redundant. In any event, to the extent that counsel chose not to use a chart to make this point, that decision can only be viewed as one of reasonable strategy. A strategic decision can almost never be challenged as ineffective assistance and counsel's performance is viewed deferentially, "with the understanding that there is a great deal of room for disagreement among reasonable attorneys as to the appropriate strategy or tactics to employ in the course of representation." *Woods v. McBride,* 430 F.3d 813, 821 (7th Cir. 2005).

### D. Allocution

Herrera next claims that counsel was ineffective for advising him not to make a statement at sentencing. (Pet. at 13-14). *Pro se* litigants are held to a less stringent standard of pleading, *Gutierrez*, 111 F.3d at 1369, but Herrera's own submission presents the reason that this claim, too, must be dismissed: Herrera observes that it "may have been understandable for counsel to believe that the best course of action was for the Petitioner to not make a statement at his sentencing because counsel honestly believed that the Petitioner would be granted a new trial as a result of the appeal process." (Pet. at 13-14.) As explained above, a strategic decision must be viewed deferentially and can almost never be challenged as ineffective assistance of counsel. *United States v. Dyer*, 784 F.2d 812, 817 (7th Cir. 1986). Notably, Herrera now suggests he could have explained "exactly what his role consisted of instead of allowing the testimony of cooperating Government witnesses and unsubstantiated allegations by the Government to go uncontested," but he has not yet identified the purported inaccuracies in the

6

evidence. In short, Herrera has not explained what he would have said at sentencing that might have resulted in greater leniency. There is no basis for a finding of ineffective assistance in this regard.

## II.     Strategy on Appeal

Trial counsel represented Herrera on appeal, as well, and filed a substantial brief. The appeal challenged the court's response to a juror's question; the court's admission of fingerprint evidence; the reassignment of the case, mid-trial, to another district judge, at the direction of the Court of Appeals, *see In re United States*, 614 F.3d 661 (7th Cir. 2010); and the court's consideration, at sentencing, of relevant conduct. Herrera now claims his appellate counsel was ineffective.

The two-pronged *Strickland* test is employed to evaluate the effectiveness of appellate counsel, as well. *Suggs v. United States,* 513 F.3d 675, 678 (7th Cir. 2008) (citing *Gray v. Greer,* 800 F.2d 644, 646 (7th Cir. 1985)). To satisfy the deficiency prong on appeal, Petitioner would need to establish that his attorney ignored a significant and obvious issue, and that the issue[s] counsel ignored were clearly stronger than an issue raised by counsel on appeal. *Suggs,* 513 F.3d at 678 (citing *Strickland,* 466 U.S. at 694).

Herrera's claims do not satisfy that test. First, he appears to believe that counsel was ineffective in failing to challenge the court's consideration of acquitted conduct in determining drug quantity. (Pet. at 15.) The record squarely defeats this claim: the appellate record confirms that counsel did challenge the court's reliance on acquitted conduct in determining drug quantity. (Brief of Defendant-Appellant in 11-2894 [12], at 44-51; Reply Brief of Defendant-Appellant in 11-29894 [23], at 25-26.) The case law defeats this claim, as well. The Seventh Circuit, like all others, has held that sentencing judges may determine facts relevant to sentencing on a preponderance-of-the-evidence standard, and may consider acquitted conduct. *United States v. Lucas*, 670 F.3d 784, 790 (7th Cir. 2012); *United States v. Walltower*, 643 F.3d 572, 574-579 (7th Cir. 2011); *United States v. Booker*, 612 F.3d 596, 602-603 (7th Cir. 2010);

7

*United States v. Ashqar*, 582 F.3d 819, 823-825 (7th Cir. 2009). *Alleyne v. United States*, 133 S.Ct. 2151 (2013) does not alter this practice. That case held that any fact that increases the statutory maximum or minimum penalty must be found by the jury. *Id.* at 2161, n.2. The Court acknowledged, however, that its holding did not preclude judicial factfinding at sentencing, even though "such findings of fact may lead judges to select sentences that are more severe than the ones they would have selected without those facts." *Id.*

Counsel failed, Herrera argues, to challenge the district court's drug quantity finding, to challenge the court's application of the enhancement for use of a minor, to challenge the enhancement for Herrera's leadership role, or to argue sentence disparities. (Pet. at 16.) But he offers no basis for the conclusion that any of these challenges would have been clearly stronger than the ones that counsel did assert. Counsel did make arguments regarding drug quantity, role in the offense, and sentence disparities, before the district court, and Herrera has not suggested any basis on which the district court's dispositions of those issues were infirm. Counsel did not challenge the "use of a minor" enhancement, and this court has explained why such a challenge would have been frivolous. In any event, the decision not to raise the matter before the district court precluded its consideration by the Court of Appeals. There is no basis for a finding of ineffective assistance on appeal.

## III. Advice Concerning a Possible Plea

As explained above, there is no basis for a finding of ineffective assistance with respect to any aspects of counsel's performance that the court can assess or observe. Herrera also argues, however, that counsel was ineffective in one arena that the court does not observe. Specifically, Herrera contends that counsel should have strongly advised him against proceeding to trial. He argues that "[g]iven the broad admissibility of hearsay testimony; the expansive admissibility of expert testimony; and the limitless admissability [sic] of physical evidence in federal trials, it is difficult to imagine how an attorney of Mr. Fuentes' stature did not realize that a conviction, if only on a count or two, was inevitable . . . . Indeed, Petitioner was

8

assured that he stood a 'good chance' of being acquitted of the charges." (Pet. at 5-6.) In an affidavit submitted more recently, Herrera states that "counsel never informed [him] of the weight of evidence . . . or the inner workings of the United States Criminal Justice system," never told him "that to proceed to trial was not a good idea," and directed him not to discuss his case with anyone. (Affidavit of Clacy Watson Herrera [12] at ¶¶ 1-3.) Thus, Herrera asserts, "it was only after speaking to another inmate that Petitioner learned that he could get less time if he pled guilty with a plea agreement, or a blind plea with the judge." (*Id.* ¶ 3.) He asserts, further, that he "told counsel he did not want to go to trial but counsel told Petitioner it was too late and there was nothing else to do." (*Id.* ¶ 4.)

A defendant can prove that his counsel's performance was deficient if he demonstrates that counsel did not make a good-faith effort to discover the relevant facts, to analyze those facts in terms of the applicable legal principles and to discuss that analysis with his client. *United States v. Barnes,* 83 F.3d 934, 940 (7th Cir. 1996). Effective assistance of counsel includes appropriate pre-trial counseling. Thus, the Supreme Court has recognized that the Sixth Amendment right to counsel extends to the plea-bargaining process, and advice to reject a plea offer on the ground that the defendant would not be convicted at trial could constitute ineffective assistance. *See Missouri v. Frye,* 132 S.Ct. 1399 (2012); *Lafler v. Cooper*, 132 S.Ct. 1376 (2012). The remedy for such ineffective assistance, the Court observed, would be to require the state to re-offer the plea deal and, if petitioner accepted it, to permit the state court, in its discretion, to resentence him.

In this case, as in any case alleging ineffective assistance, petitioner bears the burden of establishing both inadequate performance and resulting prejudice. That showing is particularly complicated where petitioner had a fair trial, but claims that the decision to proceed to trial was itself the product of ineffective assistance. The Supreme Court addressed such a claim in *Burt v. Tidlow*, 134 S.Ct. 10 (2013), where petitioner had entered into a favorable plea agreement, but then made a claim of innocence, hired new counsel, and withdrew the plea. Found guilty by

9

the jury, he was sentenced to a term substantially longer than the one he had bargained for. 134 S.Ct. at 14. On direct appeal, petitioner argued that counsel had advised him to withdraw the plea without sufficient investigation, "thereby failing to realize the strength of the State's evidence and providing ineffective assistance of counsel." *Id.* The Michigan state courts rejected the argument, emphasizing the defendant's claim of innocence; in their view, when a defendant makes such a claim, advice to proceed to trial cannot be unreasonable. But the Sixth Circuit concluded defendant was entitled to relief under § 2255, because there was no evidence that counsel had ever fully informed the defendant of the possible consequences of withdrawing his guilty plea.

The U.S. Supreme Court reversed. The Court noted that there appeared to be no explanation for petitioner's decision to withdraw his plea other than his own second thoughts and claim of innocence. The Sixth Circuit's reliance on the absence of evidence was "troubling," the Court held, because counsel is "strongly presumed" to have rendered adequate assistance in the plea negotiation context, and it is the petitioner who bears the burden of offering evidence that trial counsel gave incorrect advice or failed to give material advice. *Id.* at 17. As petitioner had entered a guilty plea earlier, the Court found it "highly unlikely" that he labored under any confusion about the strength of the evidence against him. *Id.* at 18. Concurring, Justice Ginsburg noted that petitioner had never been willing to testify against his co-defendant, and the prosecutor would not have offered a plea deal that did not require such testimony.

There is no reference in Herrera's submissions to any proposed plea agreement, and no indication the government was prepared to offer one. Had Herrera pleaded guilty without an agreement, he presumably would have been forced to plead guilty to all of the counts against him, including several on which the jury found him not guilty. The government contends that this means Herrera cannot establish any prejudice resulting from counsel's alleged failure to encourage him to plead guilty. (Government's Response to Defendant's Motion to Vacate [7] at 9 n. 4.)

10

This court is less certain. Had Herrera pleaded guilty even without a plea agreement (referred to sometimes as a "blind plea"), he may have earned a three-point reduction in his sentence for "acceptance of responsibility" pursuant to U.S.S.G. § 3E1.1. Counsel's alleged failure to advise his client of the legal consequences of a guilty plea, with or without a plea agreement, could therefore constitute ineffective assistance. *See United States v. Hernandez*, 450 F. Supp.2d 950 (N.D. Ia. 2006) (concluding, after an evidentiary hearing, that counsel did not give adequate advice on this question and that petitioner was therefore entitled to resentencing on the basis of a "straight-up" (that is, "blind") plea of guilty). The record before the court does not defeat Herrera's contention that he was willing to enter such a plea. Though Herrera continues to challenge certain sentencing enhancements, he has not proclaimed actual innocence. *Compare United States v. Stevens,* 149 F.3d 747, 749 (8th Cir. 1998) (defendant cannot establish prejudice resulting from counsel's failure to advise him of the advantages of pleading guilty because there was no "reasonable probability that he would have acknowledged his guilt had he been properly advised . . . ."); *Richards v. United States*, No. 05-CR-35-TS, 2009 WL 3109757, at *4 (N.D. Ind. Sept. 24, 2009) (counsel's failure to advise plaintiff to plead guilty was not ineffective assistance, where there was no plea agreement and defendant protested his innocence). Nor is there a basis for this court to presume that Herrera did know he was entitled to plead guilty and earn a guidelines reduction. *Compare Paez-Ortiz v. United States,* 200 Fed. App'x. 946, 948 (11th Cir. 2006) (petitioner cannot demonstrate prejudice from counsel's failures where the record shows that defendant "was aware of his option to plead guilty to the charged offenses, and was aware of the consequences a guilty plea would have at sentencing."); *Herrera v. United States*, No. 07 C 7235, 2010 WL 1541640, at *3 (N.D. Ill. Apr. 15, 2010) (alleged failure to advise defendant that he could plead guilty and receive an adjustment for acceptance of responsibility did not prejudice defendant who had entered a blind plea in another case just two years earlier, and received the adjustment).

It may well be that counsel did in fact discuss the possibility of a guilty plea with Mr. Herrera, and that Herrera rejected it, but it is also possible that counsel did not adequately inform Herrera of the plea process. Assuming that no plea agreement was offered (there is no evidence on this issue), it may be that a blind plea to all of the charges in this case could not have yielded a more favorable sentence than the below-guidelines sentence this court imposed—meaning that Herrera was not prejudiced by counsel's alleged failures. The court concludes, however, that these determinations cannot be made without an evidentiary hearing. *See Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001) (so long as petitioner's allegations are not "vague, conclusory, or palpably incredible," an evidentiary hearing must be granted if the petitioner "alleges facts that, if proven, would entitle him to relief" (quoting *Stola v. United States*, 22 F.3d 766, 768 (7th Cir. 1994))).

In *Estremera v. United States,* 724 F.3d 773 (7th Cir. 2013), petitioner stated in an affidavit that his attorney never advised him that the prosecutor's final plea offer did not specifically require him to testify against others, and that he would have accepted such an offer. On appeal from denial of § 2255 relief, the government argued "that a hearing is unnecessary because [petitioner] was sure never to plead guilty," but the Seventh Circuit directed the district court to conduct a hearing on the issue. *Id.* at 778; *see also Griffin v. United States*, 330 F.3d 733, 739 (6th Cir. 2003) (finding sufficient objective evidence to warrant an evidentiary hearing on whether there was a reasonable probability that petitioner would have accepted plea offer if he had known about it); *United States v. Villasenor*, No. 13-c-148, 2014 WL 5858718, at *4 (N.D. Ill. Nov. 12, 2014) (granting petitioner hearing to develop claim that he would have accepted alleged plea offer). In this case, too, the court concludes a hearing is necessary on the issue of what advice, if any, Herrera received concerning the entry of a guilty plea, and whether the advice he received (or did not receive) prejudiced him.

## CONCLUSION

Petitioner's motion to submit affidavit [12] is granted. The information set forth in that affidavit satisfies the court that a hearing is necessary. The Federal Defender is directed to identify an attorney to represent Mr. Herrera for purposes of this hearing. A status conference is set for March 1, 2016 at 9:00 a.m.

ENTER:

Dated: February 12, 2016

REBECCA R. PALLMEYER
United States District Judge